FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

# Feb 23, 2021

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

BRIAN I.,[1]

                Plaintiff,

    v.

ANDREW M. SAUL, the Commissioner
of Social Security,

                Defendant.

No.    4:20-CV-5028-EFS

**ORDER DENYING PLAINTIFF'S SUMMARY-JUDGMENT MOTION AND GRANTING DEFENDANT'S SUMMARY-JUDGMENT MOTION**

Before the Court are the parties' cross summary-judgment motions.[2] Plaintiff Brian I. appeals the denial of benefits by the Administrative Law Judge (ALJ). He alleges the ALJ erred by 1) improperly weighing the medical opinions, 2) discounting Plaintiff's symptom reports, 3) improperly determining that the impairments did not meet or equal Listings 12.03, 12.04, 12.06, 12.08, and 12.15

---

[1] To protect the privacy of the social-security Plaintiff, the Court refers to him by first name and last initial or by "Plaintiff." *See* LCivR 5.2(c).

[2] ECF Nos. 12 & 13.

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 1

and failing to consider Listing 11.02, and 4) improperly assessing Plaintiff's residual functional capacity and therefore relying on an incomplete hypothetical at step five. In contrast, Defendant Commissioner of Social Security asks the Court to affirm the ALJ's decision finding Plaintiff not disabled. After reviewing the record and relevant authority, the Court denies Plaintiff's Motion for Summary Judgment, ECF No. 12, and grants the Commissioner's Motion for Summary Judgment, ECF No. 13.

## I.    Five-Step Disability Determination

A five-step sequential evaluation process is used to determine whether an adult claimant is disabled.[3] Step one assesses whether the claimant is currently engaged in substantial gainful activity.[4] If the claimant is engaged in substantial gainful activity, benefits are denied.[5] If not, the disability-evaluation proceeds to step two.[6]

Step two assesses whether the claimant has a medically severe impairment, or combination of impairments, which significantly limits the claimant's physical

---

[3] 20 C.F.R. § 416.920(a).

[4] *Id.* § 416.920(a)(4)(i).

[5] *Id.* § 416.920(b).

[6] *Id.*

or mental ability to do basic work activities.[7] If the claimant does not, benefits are denied.[8] If the claimant does, the disability-evaluation proceeds to step three.[9]

Step three compares the claimant's impairment(s) to several recognized by the Commissioner to be so severe as to preclude substantial gainful activity.[10] If an impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled.[11] If an impairment does not, the disability-evaluation proceeds to step four.

Step four assesses whether an impairment prevents the claimant from performing work he performed in the past by determining the claimant's residual functional capacity (RFC).[12] If the claimant is able to perform prior work, benefits are denied.[13] If the claimant cannot perform prior work, the disability-evaluation proceeds to step five.

Step five, the final step, assesses whether the claimant can perform other substantial gainful work—work that exists in significant numbers in the national

---

[7] 20 C.F.R. § 416.920(a)(4)(ii).

[8] *Id.* § 416.920(c).

[9] *Id.*

[10] *Id.* § 416.920(a)(4)(iii).

[11] *Id.* § 416.920(d).

[12] *Id.* § 416.920(a)(4)(iv).

[13] *Id.*

economy—considering the claimant's RFC, age, education, and work experience.[14] If so, benefits are denied. If not, benefits are granted.[15]

The claimant has the initial burden of establishing entitlement to disability benefits under steps one through four.[16] At step five, the burden shifts to the Commissioner to show that the claimant is not entitled to benefits.[17]

## II.    Factual and Procedural Summary

Plaintiff filed a Title XVI application, alleging an amended disability onset date of July 6, 2016.[18] His claim was denied initially and upon reconsideration.[19] A video administrative hearing was held before Administrative Law Judge Marie Palachuk.[20]

In denying Plaintiff's disability claim, the ALJ made the following findings:

- Step one: Plaintiff had not engaged in substantial gainful activity since July 6, 2016, the application date;

---

[14] 20 C.F.R. § 416.920(a)(4)(v); *Kail v. Heckler*, 722 F.2d 1496, 1497-98 (9th Cir. 1984).

[15] 20 C.F.R. § 416.920(g).

[16] *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007).

[17] *Id.*

[18] AR 194.

[19] AR 192 & 211.

[20] AR 116-56.

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 4

- Step two: Plaintiff had the following medically determinable severe impairments: degenerative disc disease of the lumbar spine, human immunodeficiency virus positive with excellent virologic suppression, schizoaffective disorder, major depressive disorder, anxiety disorder, and unspecified personality disorder;

- Step three: Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments;

- RFC: Plaintiff had the RFC to perform light work with the following limitations:

  [H]e can occasionally climb ladders, ropes, or scaffolds; he can frequently balance, stoop, kneel, crouch and crawl; he is able to maintain attention and concentration for two hour intervals between regular scheduled breaks; he needs a predictable environment with seldom changes; he cannot perform at a fast-paced production rate of pace; he cannot work with the public, and can have infrequent and superficial, defined as non-collaborative/no tandem tasks, interaction with coworkers.

- Step four: Plaintiff was not capable of performing past relevant work; and

- Step five: considering Plaintiff's RFC, age, education, and work history, Plaintiff could perform work that existed in significant

numbers in the national economy, such as mail clerk, warehouse

checker, and cleaner, housekeeper.[21]

When assessing the medical-opinion evidence, the ALJ gave:

- significant weight to the opinions of testifying experts Marian Martin, Ph.D. and John Morse, M.D., and the reviewing opinions of State agency psychologists Kristine Harrison, Psy.D. and Ken Reade, Ph.D.; and

- little weight to the opinions of treating physician Suzanne Staudinger, M.D., examining psychologists NK Marks, Ph.D. and Thomas Genthe, Ph.D., and treating counselor Toni Kugler, B.S.[22]

The ALJ also found that Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms, but that his statements concerning the intensity, persistence, and limiting effects of those symptoms were not entirely consistent with the medical evidence and other evidence in the record.[23]

Plaintiff requested review of the ALJ's decision by the Appeals Council, which denied review.[24] Plaintiff timely appealed to this Court.

---

[21] AR 19-27.

[22] AR 24-26.

[23] AR 22-24.

[24] AR 1-3.

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 6

### III.    Standard of Review

A district court's review of the Commissioner's final decision is limited.[25] The Commissioner's decision is set aside "only if it is not supported by substantial evidence or is based on legal error."[26] Substantial evidence is "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[27] Moreover, because it is the role of the ALJ and not the Court to weigh conflicting evidence, the Court upholds the ALJ's findings "if they are supported by inferences reasonably drawn from the record."[28] The Court considers the entire record as a whole.[29]

---

[25] 42 U.S.C. § 405(g).

[26] *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012).

[27] *Id.* at 1159 (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)).

[28] *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012).

[29] *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (The court "must consider the entire record as whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion," not simply the evidence cited by the ALJ or the parties.); *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998) ("An ALJ's failure to cite specific evidence does not indicate that such evidence was not considered[.]").

1

2
     Further, the Court may not reverse an ALJ decision due to a harmless

3
error.[30] An error is harmless "where it is inconsequential to the [ALJ's] ultimate

4
nondisability determination."[31] The party appealing the ALJ's decision generally

5
bears the burden of establishing harm.[32]

6
### IV.    Analysis

7
**A.    Medical Opinions: Plaintiff fails to establish error.**

8
     Plaintiff argues the ALJ failed to consider Marian Martin, Ph.D.'s opined

9
limitations. Plaintiff also challenges the ALJ's assignment of little weight to the

10
opinions of Suzanne Staudinger, M.D., NK Marks, Ph.D., Thomas Genthe, Ph.D.,

11
and Toni Kugler, B.S. As discussed below, the Court finds Plaintiff fails to

12
establish that the ALJ's weighing of the medical-opinion evidence was erroneous.

13
    1.    <u>Standard</u>

14
     The weighing of medical opinions is dependent upon the nature of the

15
medical relationship, i.e., 1) a treating physician, 2) an examining physician who

16
examines but did not treat the claimant, and 3) a reviewing physician who neither

17
treated nor examined the claimant.[33] Generally, more weight is given to the

18
opinion of a treating physician than to an examining physician's opinion and both

19
[30] *Molina*, 674 F.3d at 1111.

20
[31] *Id.* at 1115 (quotation and citation omitted).

21
[32] *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

22
[33] *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014).

23

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 8

1

2    treating and examining opinions are to be given more weight than the opinion of a

      reviewing physician.[34]

3

4            When a treating physician's or evaluating physician's opinion is not

      contradicted by another physician, it may be rejected only for "clear and

5     convincing" reasons, and when it is contradicted, it may be rejected for "specific

6     and legitimate reasons" supported by substantial evidence.[35] A reviewing

7     physician's opinion may be rejected for specific and legitimate reasons supported by

8     substantial evidence, and the opinion of an "other" medical source[36] may be

9     rejected for specific and germane reasons supported by substantial evidence.[37] The

10    opinion of a reviewing physician serves as substantial evidence if it is supported by

11    other independent evidence in the record.[38]

12

13    _____

14    [34] Id.; Lester v. Chater, 81 F.3d 821, 830-31 (9th Cir. 1995).

15    [35] Lester, 81 F.3d at 830.

16    [36] See 20 C.F.R. § 404.1502 (For claims filed before March 27, 2017, acceptable

17    medical sources are licensed physicians, licensed or certified psychologists, licensed

18    optometrists, licensed podiatrists, qualified speech-language pathologists, licensed

      audiologists, licensed advanced practice registered nurses, and licensed physician

19    assistants within their scope of practice—all other medical providers are "other"

20    medical sources.).

21    [37] Molina, 674 F.3d at 1111; Bruce v. Astrue, 557 F.3d 1113, 1115 (9th Cir. 2009).

22    [38] Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995).

23

      ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 9

1

2        2.    Dr. Marian Martin

3        Dr. Martin reviewed the medical evidence of record and testified as a

4    medical expert on December 18, 2018. Dr. Martin opined Plaintiff presented with

5    symptoms of schizoaffective disorder, major depressive disorder, unspecified

6    anxiety disorder, and possibly schizotypal or unspecified personality disorder. As to

7    the B Criteria of mental listings, Dr. Martin opined that Plaintiff was:

8
        • mildly limited in his ability to understand, remember, or apply

9          information;

10       • mildly to moderately limited in his ability to interact with others, and

11         adapt and manage one's self; and

12       • markedly limited in his ability to concentrate, persist, or maintain

13         pace because he would have difficulties sustaining pace and

14         persisting.

15   Dr. Martin also opined that Plaintiff would be able to maintain attention and

16   concentration for two-hour intervals between regularly scheduled breaks, be in a

17   predictable environment with seldom change, be limited to no fast-paced

18   production rate of work, and be limited to occasional or infrequent contact with the

19   public and coworkers.

20       The ALJ gave significant weight to Dr. Martin's opinion because of her

21   specialized expertise with the case, her familiarity with the Social Security

22   disability program, her review of the entire medical evidence of record, the opinion

23

was consistent with the mental status examinations in the record, and the opinion was supported with specific citations to the record.[39]

Plaintiff argues the ALJ ignored Dr. Martin's marked limitations in concentration, persistence, and pace, and that such limitations correspond to a finding of disabled.[40] However, when asked whether Plaintiff could sustain a workday in spite of others' opinions (opinions properly discounted by the ALJ) that Plaintiff would miss work 2-4 times per month, Dr. Martin responded that she did not believe Plaintiff would have difficulty sustaining work unless there was a situation that would exacerbate Plaintiff's symptoms, such as substance abuse.[41] Dr. Martin indicated that the record indicated Plaintiff's psychological issues were well managed on medication and he seemed to "be functioning pretty well."[42] Plaintiff fails to show how the limitations in the RFC (able to maintain attention and concentration for two hour intervals between regular scheduled breaks, needs a predictable environment with seldom changes, cannot perform at a fast-paced production rate of pace, cannot work with the public, and can have infrequent and superficial interaction with coworkers) do not account for Dr. Martin's opined limitations in concentration, persistence, and pace.

---

[39] AR 24.

[40] ECF No. 12 at 14.

[41] AR 132-33.

[42] AR 133.

1

2

3        3.    Dr. Suzanne Staudinger

4    Dr. Staudinger began treating Plaintiff on September 13, 2017. On

5    November 14, 2018, Dr. Staudinger completed a medical report.[43] Dr. Staudinger

6    diagnosed Plaintiff with HIV, chronic anxiety/PTSD, and hypertension. Dr.

7    Staudinger opined that Plaintiff would miss 4 or more days of work per month

8    because of chronic fatigue due to HIV and be off task more than 30 percent of the

9    time.

10    The ALJ discounted Dr. Staudinger's opinion because it was inconsistent

11    with the longitudinal medical evidence of record, specifically related to complaints

12    of fatigue.[44] Plaintiff argues the record shows Plaintiff experienced fatigue and that

13    Dr. Morse would defer to Dr. Staudinger regarding Plaintiff's fatigue.

14    First, the ALJ's finding that Dr. Staudinger's opinion was inconsistent with

15    the longitudinal medical record is rational and supported by substantial evidence.

16    Whether a medical opinion is consistent with the longitudinal record is a factor for

17    the ALJ to consider.[45] The ALJ acknowledged that Plaintiff complained of fatigue

18

19    _____

20    [43] AR 977-78.

21    [44] AR 25-26.

22    [45] *See Lingenfelter v. Astrue*, 504 F.3d 1028, 1042 (9th Cir. 2007) (recognizing that

23    the ALJ is to consider the consistency of the medical opinion with the record as a

whole).

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23

but determined the evidence showed Plaintiff often denied experiencing fatigue.[46] Multiple medical records – records cited by the ALJ – show no symptoms of fatigue.[47] Plaintiff also argues the ALJ "ignores the logical inference that [Plaintiff] does not always present with fatigue due to his frequent napping during the day, allowing him to recover enough energy to travel to medical appointments" and that the ALJ erred in failing to assess whether Plaintiff would need a nap for forty-five minutes during the workday.[48] However, the objective medical evidence does not reflect Plaintiff consistently took naps before medical appointments.[49] Plaintiff's reports of sleep issues reference trouble sleeping at night but that medication helped.[50] That the longitudinal medical record was inconsistent with Dr.

---

[46] AR 26 (citing AR 454, 456, 458, 462, 466, 468, 470, 472, 476, 912, 929, 986, 988, 990, 992, 1007, 1042, 1056, 1062, 1067, 1078, 1094, 1116, & 1119).

[47] *Compare* AR 454, 456, 458, 462, 466, 468, 470, 472, 476, 912, 929, 986, 988, 990, 992, 1003, 1007, 1042, 1056, 1062, 1067, 1078, 1094, 1116, & 1119 (negative for fatigue), *with* AR 881, 912, & 919 (positive for fatigue).

[48] ECF No. 12 at 10.

[49] *Compare* AR 454, 456, 458, 466, 470, 472, 912, 986, 990, 992, 1004, 1007, 1043, 1057, 1068, 1095, 1117, & 1120 (negative for sleep disturbance), *with* AR 962 (positive for sleep disturbance).

[50] AR 343 ("I have insomnia and struggled to sleep well, have meds to help, sometimes it does not."); AR 436 (Plaintiff has been eating and sleeping better); AR

Staudinger's opinion was a specific and legitimate reason supported by substantial evidence to discount the opinion.

As to Dr. Morse, he opined Plaintiff would be limited to lifting 10 pounds on a frequent basis and 20 pounds occasionally, sitting for 6 hours, standing and walking up to 6 hours, frequent ramps and stairs with occasional ladders, ropes and scaffolds, and frequent kneeling, bending, crouching, and crawling. Dr. Morse testified that his opined limitations accounted for Plaintiff's fatigue and pain and that any side effects from Plaintiff's antiviral medication could not "extend . . . to being required to take naps and things of that sort."[51] Dr. Morse considered Plaintiff's fatigue in is opined limitations.

The ALJ's decision to discount Dr. Staudinger's opinion is supported by legitimate and specific reasons supported by substantial evidence.

4.    Dr. NK Marks

On March 27, 2015, Dr. Marks performed a psychological evaluation of Plaintiff.[52] As part of the evaluation, Dr. Marks reviewed psychological evaluations

---

505 (refilled Ambien, works but Plaintiff needs nightly); AR 600 (Reports trouble sleeping due to PCP weening him off Ambien); AR 879 (Dr. Staudinger progress notes: Plaintiff sleeping well, Ambien discontinued); & AR 915 (Dr. Staudinger progress notes: Plaintiff is very tired during the day).

[51] AR 126.

[52] AR 430-34.

from 2009 and 2014, a 2010 mental health evaluation, a 2012 evaluation, and a 2011 DSHS evaluation. Dr. Marks diagnosed Plaintiff with unspecified anxiety disorder, gender dysphoria, unspecified depressive disorder, unspecified personality disorder with cluster B features, and schizotypal personality disorder. Dr. Marks opined Plaintiff was:

- moderately limited in understanding, remembering, and persisting in tasks by following very short and simple instructions and following detailed instructions, learning new tasks, being aware of normal hazards and taking appropriate precautions, and asking simple questions or requesting assistance;

- markedly limited in performing activities within a schedule, maintaining regular attendance, and being punctual within customary tolerances without special supervision, and asking simple questions or requesting assistance; and

- severely limited in communicating and performing effectively in a work setting, completing a normal workday and work week without interruptions from psychologically based symptoms, maintaining appropriate behavior in a work setting, and setting realistic goals and planning independently.

On June 7, 2018,[53] Dr. Marks performed a second psychological evaluation of Plaintiff.[54] Dr. Marks reviewed the same reports as in her 2015 evaluation. Dr. Marks diagnosed Plaintiff with unspecified anxiety disorder, unspecified depressive disorder, unspecified personality disorder, and gender dysphoria in adolescents and adults. Dr. Marks opined Plaintiff was:

- moderately limited in learning new tasks, adapting changes in a routine work setting, asking simple questions or requesting assistance, and completing a normal work day and work week without interruptions from psychologically based symptoms; and

- markedly limited in understanding remembering, and persisting in tasks by following detailed instructions, performing activities within a schedule, maintaining regular attendance, and being punctual within customary tolerances without special supervision, communicating and performing effectively in a work setting, and setting realistic goals and planning independently.

The ALJ discounted Dr. Marks' 2015 opinion because she did not review the longitudinal record, but limited her review to prior examinations by DSHS, it was inconsistent with her own observation, and it was inconsistent with Plaintiff's

---

[53] The evaluation is dated June 7, 2012. However, the ALJ confirmed the psychological evaluation of Plaintiff was performed on June 7, 2018. AR 118-19.

[54] AR 979-85.

ongoing treatment, which show "benign" mental status examinations. The ALJ discounted Dr. Marks' 2018 opinion because Plaintiff's improved functioning was not reflected, it is inconsistent with the longitudinal record, it is not supported by her own objective findings, and it was inconsistent with Dr. Martin's opinion. Plaintiff argues his contemporaneous treatment provider, Ms. Kugler, documented similar findings as Dr. Marks, Dr. Marks' clinical interview findings "constitute objective support for [her] opinion," and Dr. Marks' opinions were supported by medical evidence, including Ms. Kugler's, Dr. Genthe's, and Dr. Martin's opinions.

The ALJ found that Dr. Marks' opinions were not supported by the longitudinal record.[55] Moreover, the extent to which a medical source is "familiar with the other information in [the claimant's] case record" is a relevant factor in assessing the weight of that source's medical opinion.[56] Here, the ALJ credited the opinion of Dr. Martin, who reviewed the record as a whole and gave medical opinions contrary to Dr. Marks' opinions.[57] As is discussed below, Dr. Martin testified that the record indicated Plaintiff's psychological issues were well managed on medication and he seemed to "be functioning pretty well" and that she did not believe Plaintiff would have difficulty sustaining work unless there was a

---

[55] AR 24-25.

[56] *See* 20 C.F.R. § 416.927(c)(6).

[57] AR 24 & 130-33.

situation that would exacerbate his symptoms, such as substance abuse.[58]
Furthermore, the ALJ noted that the mental status examinations of the record are
consistently within normal limits.[59] Even if Plaintiff can identify evidence that can

---

[58] AR 132-33.

[59] *See, e.g.,*, AR 569-70 (mood anxious, affect full, speech rapid over productive,
though process loose, and perception, thought content, cognition, insight, and
judgment withing normal limits); AR 574-75 (appearance within normal limits,
attitude toward examiner cooperative, mood euthymic, affect full, speech clear,
thought process logical, no evidence of hallucinations, and perception, thought
content, cognition, and judgment withing normal limitations); AR 578-79, 582-83,
& 594-95 (mental status examination unremarkable); AR 585 & 590-91 (mood
anxious, affect full, speech clear, thought process logical, perception within normal
limits, denied/no evidence of hallucinations, and cognition, insight, and judgment
within normal limits); AR 599 (mood euthymic, affect full, speech clear, logical
thought process, no evidence of hallucinations, average intelligence, and
perception, insight, and judgment within normal limits); AR 603 (mood euthymic,
affect full, speech overproduction, logical thought process, no evidence of
hallucinations, cognition within normal limits, average intelligence, and
perception, insight, and judgment within normal limits); AR 606 (mood depressed,
affect flat, speech clear, logical thought process, perception within normal limits,

be interpreted more favorable to Plaintiff's position, the evidence is susceptible to more than one rational interpretation, and therefore the ALJ's ultimate conclusion must be upheld.[60] The ALJ did not error in discrediting Dr. Marks' psychological evaluation as not being supported by the longitudinal record.

The ALJ also found Dr. Marks' opinions were not supported by her own observations and objective findings and that Plaintiff's improved functioning was not reflected in Dr. Marks' 2018 report.[61] Internally inconsistent opinions is a specific and legitimate reason to discount a doctor's opinion.[62] Dr. Marks' 2015 mental status evaluation revealed the following observations of Plaintiff: well groomed; verbose speech; attitude and behavior verbose, tearful, emotional, and dramatic; mood tearful, sad and somewhat expansive; affect consistent with mood; thought process and content, perception, memory, and abstract thought not within normal limits; and orientation, fund and knowledge, concentration, and insight and judgment withing normal limits.[63] Dr. Marks' 2018 mental status evaluation revealed the following observations of Plaintiff: speech well-organized and

---

no evidence of hallucinations, average intelligence, insight, cognition, and judgment within normal limits); AR 903, 943, 1004, 1095, & 1117.

[60] *See Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005).

[61] AR 24-25.

[62] *See Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008).

[63] AR 433-34.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23

progressive; appearance moderately groomed; cooperative attitude and behavior; affect relaxed; thought process and content, orientation, perception, and memory within normal limits.[64] As discussed above, Dr. Marks' moderately and markedly opined limitations between 2015 and 2016 remained mostly consistent.[65] The ALJ rationally found that Dr. Marks' noted observations, which included both normal and fairly minimal observations, were inconsistent with Dr. Marks' opined disabling limitations.

Plaintiff fails to establish the ALJ erred by discounting Dr. Marks' opinions.

5.    Dr. Thomas Genthe

On July 11, 2016, Dr. Genthe performed a psychological evaluation of Plaintiff.[66] Dr. Genthe diagnosed Plaintiff with unspecified major depressive disorder, other specified schizophrenia spectrum disorder, other specified anxiety disorder, and stimulant use disorder (methamphetamine), in sustained remission. Dr. Genthe opined that Plaintiff was moderately limited in his ability to adapt to changes in a routine work setting and ask simple questions or request assistance, and markedly limited in his ability to communicate and perform effectively in a work setting, maintain appropriate behavior in a work setting, and complete a

---

[64] AR 984-86.

[65] *Compare* AR 433-34, *with* AR 983-85.

[66] AR 546-52.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23

normal work day and work week without interruptions from psychologically based symptoms. Dr. Genthe opined Plaintiff limitations would last for six months.

The ALJ discounted Dr. Genthe's opinion because 1) it was unsupported by his own findings, and 2) inconsistent with the mental status examinations throughout the record.[67]

First, a physician's opinion may be rejected if it is unsupported by the physician's treatment notes.[68] Dr. Genthe's observations showed Plaintiff was well groomed, appropriately dressed, excessively responsive to questions but he spoke at a normal rate with normal inflections, was cooperative and friendly, had a blunted affect, and was orientated within normal limits. The ALJ's decision to discount Dr. Genthe's opinion because it was not supported by the information in the opinion form is supported by substantial evidence and was a legitimate and specific reason to discount Dr. Genthe's opinion.[69]

Second, the ALJ also found Dr. Genthe's opinion inconsistent with the mental status examinations in the record. The ALJ may discount an opinion that in neither consistent with the record nor supported by the record.[70] Here, when summarizing the medical evidence, the ALJ highlighted that Plaintiff's mental

---

[67] AR 25.

[68] *See Connett v. Barnhart*, 340 F.3d 871, 875 (9th Cir. 2003).

[69] *See Bray*, 554 F.3d at 1228; *Crane v. Shalala*, 76 F.3d 251, 253 (9th Cir. 1996).

[70] *Lingenfelter*, 504 F.3d at 1042.

status examinations in the record were consistently normal.[71] On this record, the ALJ reasonably concluded that the largely normal mental status examination results were inconsistent with Dr. Genthe's opined limitations. This was a specific and legitimate reason to discount Dr. Genthe's opinion.

Lastly, temporary limitations are not enough to meet the durational requirement for a finding of disability.[72] The ALJ noted that Dr. Genthe's assessed limitations were limited to six months. Thus, any error in the ALJ discounting Dr. Genthe's opinion was harmless.

6.    Ms. Toni Kugler

On November 18, 2018, Ms. Kugler completed a Mental Residual Functional Capacity Assessment.[73] Ms. Kugler opined that Plaintiff was:

- mildly limited in his ability to remember locations and work-like procedures, understand, and remember very short and simple instructions, carry out very short simple instructions, sustain

---

[71] AR 22.

[72] 20 C.F.R. § 416.905(a) (requiring a claimant's impairment to be expected to last for a continuous period of not less than twelve months); 42 U.S.C. § 423(d)(1)(A) (same); *Carmickle*, 533 F.3d at 1165 (affirming the ALJ's finding that treating physicians' short-term excuse from work was not indicative of "claimant's long-term functioning").

[73] AR 972-76.

ordinary routine without special supervision, and make simple work-related decisions;

- moderately limited in his ability to understand and remember detailed instructions, carry out detailed instructions, maintain attention and concentration for extended periods, ask simple questions or request assistance, accept instructions and respond appropriately to criticism from supervisors, respond appropriately to changes in the work setting, and set realistic goals or make plans independently of others; and

- markedly limited in his ability to perform activities within a schedule, maintain regular attendance and be punctual within customary tolerances, work in coordination with or proximity to others without being distracted by them, completing a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, interact appropriately with the general public, get along with coworkers or peers without distracting them or exhibiting behavioral extremes, and maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness.

As to B Criteria, Ms. Kugler opined Plaintiff was moderately limited in his ability to concentrate, persist, or maintain pace, and markedly limited in his ability to interact with others and adapt or manage oneself. Based on these mental

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23

limitations, Ms. Kugler opined Plaintiff would be off task over 30 percent of the time and miss 4 or more days of work per month.

The ALJ discounted Ms. Kugler's opinion because 1) she is not an acceptable source and she completed the document with the Plaintiff, 2) it was inconsistent with the medical evidence in the record, and 3) unsupported by her own treatment notes.

Although an individual's status as a medically acceptable source may impact the amount of deference the ALJ gives to an opinion, the ALJ may not reject an opinion as to a claimant's limitations because the opinion comes from a non-acceptable medical source.[74] Relevant factors to evaluating any medical opinion include the amount of relevant evidence that supports the opinion, the quality of the explanation provided in the opinion, and the consistency of the medical opinion with the record.[75] An ALJ may choose to give more weight to an opinion that is more consistent with the evidence in the record.[76] Here, as previously discussed, when summarizing the medical evidence, the ALJ highlighted that Plaintiff's mental status examinations of the record were consistently normal.[77] On this record, the ALJ reasonably concluded that the largely normal mental status

---

[74] 20 C.F.R. § 416.927.

[75] *Lingenfelter v. Astrue*, 504 F.3d 1028, 1042 (9th Cir. 2007).

[76] 20 C.F.R. § 416.927(c)(4).

[77] AR 22 & 25.

1

2

examination results were inconsistent with Ms. Kugler's opined limitations. This

was a germane reason to discount Ms. Kugler's opinion.

3

4

5

6

7

8

Additionally, the ALJ's finding that Ms. Kugler's treatment notes did not

support her opined restrictions is a germane finding supported by substantial

evidence. As previously discussed, the treatment notes support average mental

status examinations and progress in achieving Plaintiff's goals.[78] That Ms. Kugler's

opined check-box restrictions were not supported by her treatment notes was a

germane reason to discount Ms. Kugler's opinion.[79]

9

**B.    Step Three (Listings): Plaintiff fails to establish error.**

10

11

12

13

14

Plaintiff contends the ALJ erred by finding that Plaintiff's impairments did

not meet or medically equal Listings 12.03, 12.04, 12.06, 12.08, and 12.15, singly or

in combination. Specifically, Plaintiff argues that the ALJ committed reversible

error by failing to make any specific findings on paragraph C criteria under the

relevant 12.00 listings.[80]

15

16

17

At step three of the sequential evaluation process, the ALJ considers

whether one or more of the claimant's impairments meets or equals any of the

18

19

[78] *See, e.g.,* AR 569-70, 574-75 578-79, 582-83, 594-95, 599, 603, 606, 903, 943, 1004,

1095, and 1117.

20

21

[79] *See Bray*, 554 F.3d at 1228; *Crane v. Shalala*, 76 F.3d 251, 253 (9th Cir. 1996);

*see also Trevizo v. Berryhill*, 871 F.3d 664, 677 n.4 (9th Cir. 2017).

22

23

[80] ECF No. 12 at 15-17.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23

impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App.1.[81] "If a claimant has an impairment or combination of impairments that meets or equals a condition outlined in [the listings], then the claimant is presumed disabled" without further inquiry.[82] "An ALJ must evaluate the relevant evidence before concluding that a claimant's impairments do not meet or equal a listed impairment."[83] "A boilerplate finding is insufficient to support a conclusion that a claimant's impairment does not do so."[84]

In determining whether a claimant with a mental impairment meets a listed impairment, the ALJ must follow a "special technique" to evaluate the claimant's symptoms and rate her functional limitations.[85] Specifically, the ALJ must consider: 1) whether specific diagnostic criteria are met ("paragraph A" criteria); and 2) whether specific impairment-related functional limitations are present ("paragraph B" and "paragraph C" criteria).[86] The criteria in paragraph A substantiate medically the presence of a particular mental disorder.[87] The criteria

---

[81] 20 C.F.R. § 416.920(a)(4)(iii); *Tacket*, 180 F.3d at 1098.

[82] *Lewis v. Apfel*, 236 F.3d 503, 512 (9th Cir. 2001) (citing 20 C.F.R. § 404.1520(d)).

[83] *Id.*

[84] *Id.* (citing *Marcia v. Sullivan*, 900 F.2d 172, 176 (9th Cir. 1990)).

[85] 20 C.F.R. § 404.1520a(a).

[86] 20 C.F.R. § 404.1520a(b).

[87] 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00(A)(2)(a).

1

2

in paragraphs B and C, on the other hand, describe impairment-related functional

limitations that are incompatible with the ability to do any gainful activity.

To meet or equal listing 12.03 (schizophrenia), 12.04 (depression, bipolar

disorder), 12.06 (anxiety), or 12.15 (trauma), a claimant must satisfy 1) paragraphs

A and B, or 2) paragraphs A and paragraph C.[88] To meet or equal listing 12.08

(personality disorder), a claimant must only satisfy the requirements of paragraphs

A and B; listing 12.08 does not include paragraph C criteria.[89]

In her decision, the ALJ elected to analyze listings 12.03, 12.04, 12.06, and

12.08 simultaneously.[90] The ALJ's analysis focused on whether paragraph B

criteria had been satisfied for the listings at issue. After evaluating each of the four

requirements under paragraph B, the ALJ concluded that the paragraph B criteria

had not been met. Subsequently, the ALJ summarily confirmed that she had "also

considered whether the 'paragraph C' criteria are satisfied" and concluded

"[Plaintiff] has achieved only marginal adjustment, as the evidence does not show

that changes or increased demands have led to exacerbation of his symptoms and

signs and to deterioration in his functioning."[91]

---

[88] 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00(A)(2).

[89] *Id.*

[90] AR 20-21.

[91] AR 21.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

Here, Plaintiff does not contest the ALJ's analysis in respect to the paragraph B criteria.[92] Instead, Plaintiff argues that the ALJ failed to properly consider the listings' paragraph C criteria.[93] The Court finds the ALJ's articulated reasoning and analysis sufficiently specific (in light of the entire ALJ decision) and supported by substantial evidence.

"The paragraph C criteria are an alternative to the paragraph B criteria under listings 12.02, 12.03, 12.04, 12.06, and 12.15."[94] Specifically, the paragraph C criteria provide an alternative means of demonstrating disability for those claimants who experience "serious and persistent mental disorders" but whose "more obvious symptoms" have been controlled by medication and mental health interventions.[95] To satisfy the paragraph C criteria, a claimant must show that his mental impairments existed for at least two years, and that (1) he relied, "on an ongoing basis, upon medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s), to diminish the symptoms and signs of his mental disorder," and (2) despite his diminished symptoms and signs of his

---

[92] The Court notes that Plaintiff contests the medical opinion evidence – which, as previously discussed, the Court finds the ALJ reasonably discounted – but not the ALJ's analysis of paragraph B.

[93] ECF No. 12 at 16.

[94] 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00(G)(1).

[95] *Id.*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23

mental disorder, he achieved only "marginal adjustment," meaning "minimal capacity to adapt to changes in his environment or to demands that are not already part of his daily life."[96]

Listing findings by the ALJ must be read in conjunction with the entire ALJ decision.[97] Here, the ALJ discussed the medical records and medical opinions related to Plaintiff's mental impairments at great length. The ALJ noted that Plaintiff's viral load has remained well controlled, his headaches are controlled with over-the-counter meds, and that the record consistently shows normal mental status examinations, all while citing to the record.[98] The ALJ's analysis in its entirety as to Plaintiff's mental-health impairments permits the Court to meaningfully review the ALJ's finding that Plaintiff's mental impairments did not satisfy the listings' paragraph C criteria.

The ALJ's finding that Plaintiff did not meet or medically equal any listing is rational and supported by substantial evidence.

**C.    Plaintiff's Symptom Reports: Plaintiff fails to establish consequential error.**

Plaintiff argues the ALJ failed to provide valid reasons for rejecting his symptom reports. When examining a claimant's symptom reports, the ALJ must

---

[96] 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00(G)(2)(b)-(c).

[97] SSR 17-2p.

[98] AR 22 &23.

make a two-step inquiry. "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged."[99] Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection."[100] Here, the ALJ found Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms inconsistent with the objective medical evidence, Plaintiff's work history, and Plaintiff's daily activities.[101]

First, as to the ALJ's finding that Plaintiff's symptom reports were inconsistent with the objective medical evidence, symptom reports cannot be solely discounted on the grounds that they were not fully corroborated by the objective medical evidence.[102] However, objective medical evidence is a relevant factor in considering the severity of the reported symptoms.[103] As discussed above, the ALJ

---

[99] *Molina*, 674 F.3d at 1112.

[100] *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (quoting *Lingenfelter*, 504 F.3d at 1036).

[101] AR 22-23.

[102] *See Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001).

[103] *Id.* "Objective medical evidence" means signs, laboratory findings, or both. 20 C.F.R. § 416.902(k). In turn, "signs" is defined as:

highlighted that while Plaintiff visited the emergency department for suicidal

ideation in 2017, the mental status examinations of record were consistently

normal (e.g., mood euthymic, affect full, speech clear, perception, insight, and

judgment within normal limits).[104] The ALJ also highlighted that Plaintiff's viral

load was well controlled and that his headaches were controlled with over-the-

---

> one or more anatomical, physiological, or psychological abnormalities
> that can be observed, apart from [the claimant's] statements
> (symptoms). Signs must be shown by medically clinical diagnostic
> techniques. Psychiatric signs are medically demonstrable phenomena
> that indicate specific psychological abnormalities, e.g., abnormalities
> of behavior, mood, thought, memory, orientation, development, or
> perception, and must also be shown by observable facts that can be
> medically described and evaluated.

*Id.* § 416.902(l). Evidence obtained from the "application of a medically acceptable

clinical diagnostic technique, such as evidence of reduced joint motion, muscle

spasm, sensory deficits, or motor disruption" is considered objective medical

evidence. 3 Soc. Sec. Law & Prac. § 36:26, Consideration of objective medical

evidence (2019).

[104] AR 22 (citing AR 569-70, 574-75 578-79, 582-83, 594-95, 599, 603, 606, 903, 943,

1004, 1095, & 1117, *but see* AR 1034 (visit to emergency department for suicidal

ideation)).

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 31

counter Tylenol and did require prophylactic medication.[105] This was a relevant factor for the ALJ to consider.

Second, evidence of a poor work history that suggests a claimant is not motivated to work is a permissible reason to discredit a claimant's testimony that he is unable to work.[106] The record indicates Plaintiff worked for approximately five months in 2002-2003 as a seasonal laborer and worked for about a year in 2008-2009 as a video clerk. Plaintiff also worked a few temporary jobs not lasting more than a couple of weeks.

Plaintiff challenges the ALJ's bases for finding he was not motivated to work for another reason outside of any disability arising in 2016. Plaintiff contends the ALJ "neglects the fact" that the SSA previously found Plaintiff disabled from March 1, 2004, to February 1, 2009.[107] In a subsequent SSA disability claim, Plaintiff was found to be not disabled between June 1, 2008, and December 11,

---

[105] AR 22 (citing AR 1067); *see also* AR 520 (chief complaint headache behind eyes that is sensitive to light – OTC aspirin x 1 day).

[106] *Thomas*, 278 F.3d at 959; SSR 96-7 (factors to consider in evaluating credibility include "prior work record and efforts to work"); *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996); 20 C.F.R. § 416.929 (work record can be considered in assessing credibility).

[107] ECF No. 12 at 19-20.

2014.[108] Plaintiff has been unemployed and not on disability since 2009. The ALJ's determination that Plaintiff has a poor work history is supported by substantial evidence. This is a valid clear and convincing reason for an adverse credibility finding.[109]

Lastly, the ALJ discounted Plaintiff's symptom reports because they were inconsistent with his activities of daily living.[110] If a claimant can spend a substantial part of the day engaged in pursuits involving the performance of exertional or non-exertional functions, the ALJ may find these activities inconsistent with the reported disabling symptoms.[111] The ALJ highlighted that Plaintiff reported being able to complete household chores (washing dishes, laundry, vacuuming, and dusting), move furniture, help a friend move, and that the record showed frequent visits to the library, church, bible study, and alcoholic anonymous meetings.[112] The ALJ also highlighted that Plaintiff reported being able to schedule his own appointments and renew his own prescriptions. In order

---

[108] AR 173.

[109] *See, e.g.*, *Matthews v. Berryhill*, 2017 WL 3383118, at *12 (E.D. Cal. Aug. 7, 2017) ("Evidence of a poor work history is a clear and convincing reason to discredit [a] plaintiff's credibility." (citations omitted)).

[110] AR 24.

[111] *Molina*, 674 F.3d at 1113.

[112] AR 22-23, 346, 547, 600, & 1110.

for Plaintiff's cited activities to be deemed "high-functioning activities of daily living" constituting a clear and convincing reason to discount Plaintiff's symptoms, the ALJ needed to have more meaningfully articulated this finding. Without a more meaningful analysis, these cited activities, which can be achieved in relatively short periods of time and not on an everyday basis, do not "contradict claims of a totally debilitating impairment."[113]

Because the ALJ articulated two other supported grounds for discounting Plaintiff's reported symptoms—inconsistent with the objective medical evidence and work history—the ALJ's decision to discount Plaintiff's reported symptoms is upheld.

**D.    Step Five: Plaintiff fails to establish error.**

Plaintiff argues that the ALJ's hypothetical failed to consider the limitations set forth by his providers, specifically the need for unscheduled breaks to lie down for 45 minutes, being off task and unproductive 10% or more of the time, and unscheduled absences occurring one day per month or more. However, this argument merely restates Plaintiff's earlier allegations of error, which are not supported by the record. Accordingly, the ALJ's hypothetical properly accounted for the limitations supported by the record.[114]

---

[113] *Molina*, 674 F.3d at 1112-13.

[114] *See Magallanes*, 881 F.2d at 756–57 (holding it is proper for the ALJ to limit a hypothetical to those restrictions supported by substantial evidence in the record).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

## V.    Conclusion

Accordingly, **IT IS HEREBY ORDERED**:

1.    Plaintiff's Motion for Summary Judgment, **ECF No. 12**, is **DENIED**.

2.    The Commissioner's Motion for Summary Judgment, **ECF No. 13**, is **GRANTED**.

3.    The Clerk's Office shall enter **JUDGMENT** in favor of Defendant.

4.    The case shall be **CLOSED**.

**IT IS SO ORDERED.**  The Clerk's Office is directed to file this Order and provide copies to all counsel.

**DATED** this 23rd day of February 2021.

_Edward F. Shea_

EDWARD F. SHEA
Senior United States District Judge